# EXHIBIT B

#2

# Rental Agreement

## THIS IS A LEGALLY BINDING CONTRACT: IF NOT UNDERSTOOD, SEEK LEGAL ADVICE

THIS RENTAL AGREEMENT, made this **9th Day** of **June, 2008**, by and between **THE BARAC COMPANY**, herein after called Landlord, party of the first part, and **Alison Anita Arrington & Christine Arrington**, jointly and severally hereinafter call Tenant, party of the second part.

**WITNESSETH:** That the Landlord does hereby let unto the Tenant the premises known as **4017 8th St NE, Apartment Number 2**, located in the District of Columbia the same being a **Two BDRM Apt.** For the term of **One Year** commencing on the **9th day of June, 2008**, at and for the total rental of **Ten Thousand Five Hundred Five Dollars, ($10,505.00)**, payable in monthly installments of **Eight Hundred Twenty-Five Dollars ($825.00)**, the first installment payable on the execution of this agreement and the remaining installments payable in advance without notice or demand, on the First day of each ensuing month to and at the office of the Landlord, 6901 4th St., NW, Washington, D.C. 20012.

## PRO RATA RENT ADJUSTMENT

It is Understood and Agreed that the Tenant is taking possession of the premises on **June, 9th 2008,** and is to pay the sum of **$825.00** as rent from that date through **July, 8th 2008**. On **July, 9th 2008**, Tenant is to pay the sum of **$605.00**, *as pro rata* rent through **July, 31st 2008**. Thereafter rent in the amount of **$825.00** will be due and payable on the FIRST day of each month, commencing **August, 1st 2008.**

**IT IS UNDERSTOOD AND AGREED THAT SHOULD TENANT REMAIN IN POSSESSION** of the above named unit after the expiration of the initial lease term, this Lease Agreement will become a Month-To-Month agreement The tenancy thereby created shall be deemed a tenancy commencing on the FIRST day of every month beginning the FIRST day of **July, 2009**.

AND THE TENANT DOES HEREBY AGREE AS FOLLOWS:

**POSSESSION** 1. That he will, and does take and hold said premises as a tenant for the term aforesaid, subject to the delivery of possession by any present occupant, and agrees that all of the representations made on the signed application are material representations made to induce the landlord to enter into this agreement, and are incorporated herein. Landlord reserves the right to cancel this agreement and repossess the demised premises should any of said representation be misleading, inaccurate or untrue. Landlord may repossess the leased premises under the Code of Law of the District of Columbia relating to landlord and tenant. THE RIGHT TO RECEIVE A 30 DAY NOTICE TO QUIT BEING HEREBY EXPRESSLY WAIVED.

**PAYMENT OF RENT WITHOUT DEDUCTION** 2. That he will pay said rent, at the time specified, without deduction or demand. Further, tenant agrees to pay the rent in certified check or money order, or such other acceptable specie as may be determined by the landlord. If another person shall pay rents to landlord for tenant's apartment, said payments shall be deemed to be on the behalf of the tenant named herein, notwithstanding that the monies may be paid by another or in another's name at the place designated the landlord. Tenant agrees, should he mail the rent and the same not be received, the U.S. Postal Service shall be deemed the agent of the tenant, and the loss shall fall on he tenant.

**UTILITIES** 3. That he will pay all gas and electric bills, and other charges provided for herein, as the same become due and he will make the necessary deposit required by the utility company. Tenant agrees to pay all water rent and sewage charges specified in the water bills. Payment of these bills is dependent on the utility meters at the demised premises. It is understood that the tenant will share in ________( % ) of the utility bills and a copy of the bill rendered by the utility company will be sufficient proof of the amount owed. Tenant shall be responsible for any damage to the leased premises that may result from the failure to maintain adequate heat to insure that no plumbing or heating equipment or pipes should freeze.

**USE OF PREMISES** 4. That he will not use, nor permit the premises or any part thereof to be used for any unlawful or disorderly purpose, nor will he permit any nuisance to be kept, conducted or permitted on or about said premises, and he will not permit any waste to be committed to said premises. Raids by the District of Columbia Police Department shall be deemed disorderly conduct on the part of the tenant and shall be sufficient cause for the landlord to file a 30-day notice to cure or vacate.

**OCCUPANTS** 5. That he will use said premises for a private residence for himself and the persons named in this lease and on the lease application only, and he will not rent rooms to roomers, guests or other persons, nor will he part with possession of said premises. Nor will he permit more than **Two** persons to occupy said premises pursuant to the requirements of the law of the District of Columbia.

**MUNICIPAL REGULATIONS AND INSPECTION** 6. That he will comply with all health regulations or other Municipal regulations of the District of Columbia at his own cost and expense and he will permit the landlord, or any of the agents, servants or employees or contractors of the Landlord, or any inspector or official of the District of Columbia to make inspection of said premises at reasonable hours.

**NOT TO TRANSFER OR ASSIGN** 7. That he will not transfer or assign this agreement, nor let or sub-let the premises in whole or in part, without the written consent of the Landlord, first had and obtained, and the tenant agrees that said tenancy is the personal estate of the tenant. Guests who stay longer than one week, or more than three weekends a year are considered to be sub-tenants, whether or not rent is collected. Should the tenant herein depart from his life, then in that event the landlord may proceed to recover possession in the Landlord and Tenant Branch of the D.C. Superior Court, or other court of competent jurisdiction and proceed as in rem. This tenancy shall be deemed terminated by the demise of the named tenant herein. In the event of any case filed in court, it being agreed that in event that the Tenant shall depart this life hereafter and the Landlord shall desire to proceed to obtain possession, although there shall not be any administration of the estate of the Tenant, it is expressly understood and agreed that the Landlord may proceed by naming the Tenant to obtain possession, as in rem.

**GOOD ORDER AND CONDITION OF PREMISES AND PARKING AREA** 8. That he will keep the said premises, including any garages, in good order and condition. These premises shall be kept in sanitary condition, and surrender the same at the expiration of his term in the same good order in which they are received, usual wear and rear and damage by fire, storm and the public enemy only excepted. Any vehicles parked in a designated parking area or space shall have current registration and shall be in workable order. Only passenger vehicles may be parked in the space. No trucks may be parked in the space. In the event that the tenant is in violation of any term or condition of this agreement the landlord may have the vehicle towed from the space at the risk and expense of the tenant. The tenant waives any liability of the landlord for any damage caused as a result of towing the vehicle.

**SECURITY DEPOSIT** 9. IT IS FURTHER UNDERSTOOD AND AGREED. That the tenant has deposited with the landlord the sum of **$500.00** as security for the faithful performance of all the terms, conditions and covenants of this lease by the tenant, the receipt of which sum the landlord hereby acknowledges and agrees to deposit in an interest bearing account at the recognized banking institution as required by D.C. Law 1-18. Said deposit may be refunded upon expiration of this lease, or any renewals or extensions, upon the express condition that the tenant shall have vacated the apartment, and returned all keys, including any mailbox keys, to the landlord, and upon further condition that all rent for said apartment shall have been paid as required in this lease and the obligations thereunder, plus any rent due during the period of any notice required by law to be given, and upon the further condition that the tenant shall not have damaged said apartment, including but not limited to any walls, ceiling, fixtures, both electrical and plumbing, floors, cabinets or other facilities beyond ordinary wear. Such deposit, under conditions, shall not be refundable in any event, until the landlord shall have had a reasonable opportunity to make an inspection of said premises after the tenant vacates. It shall be the tenant's sole responsibility to obtain a final water and sewer meter reading and tender proof payment has been made. No portion of the security deposit shall be used by Tenant for any payment of any tent due. The landlord shall not be obligated to honor any agreement among or between the co-tenants to return a portion of a security deposit if one or more co-tenants vacate, but the tenancy has not terminated. Should tenant vacate his apartment, with or without the consent of the landlord before the expiration of this lease, and any renewal or extension thereof, said deposit may be retained in its entirely by landlord

(1) as liquidated damages to cover cost of repairs to said apartment as aforesaid and/or (2) as a credit against the costs of re-renting the apartment and any additional rent for charges, garage fees, legal charges to which the landlord shall be entitled under any of the provisions of this lease. If said sum is not sufficient to cover all costs, tenant agrees to pay additional charges on demand. Tenant may not deduct this security deposit for the last months rent payment. A failure to tender the final months payment of rent as required shall be considered a breach of this agreement and landlord may immediately take any and all actions necessary. Tenant is liable for the total amount of damages in the event the deposit is not sufficient. If The Barac Company no longer manages the subject premises the security deposit, if any, and interest shall be transferred to the property owner and The Barac Company shall no longer be liable to the tenant for the security deposit.

**ELECTRICITY/ AIR CONDITIONING** 10. If electricity is furnished by the landlord the same is supplied only for lighting, radio and television. No heaters or other appliances of any kind shall be used by the tenant without the written consent of the landlord first had and obtained. It being agreed that the tenant will not install any air conditioning equipment in said apartment without written consent of the landlord. If you desire to install an air conditioner in your apartment (and the installation will not violate the fire, housing, building or other codes applicable in the District of Columbia or increase the insurance costs) you must first obtain written permission from the landlord. If permission is granted you will be charged for the use of such electricity not contemplated by the terms of your tenancy for the period May 1 through September 30th in the amount of **$N/A.** IT IS FURTHER UNDERSTOOD AND AGREED that this charge may be adjusted periodically. The supply of electric current for air conditioning and the above payment is not considered to be rent and will be set up on a separate account. The above seasonal charge is due in one (1) payment on or before May 1. Failure to obtain written permission for such electric consumption and/or failure to pay this charge will be deemed a material breach of the lease agreement and the landlord may take legal action including, but not limited to a suit for money damages, and/or service of a notice to cure violations of the tenancy or vacate.

**PETS** 11. That he will not permit or permit to be kept, any live animals of any kind, including, but not limited to, birds, dogs or cats, without the written consent of the landlord, first had and obtained. The tenant agrees that no pets are permitted either on the premises or common grounds without then prior written permission and consent of the landlord. This consent may be withheld and if granted, may be revoked, if in the sole discretion and judgment of the landlord the pet is deemed objectionably dangerous or there are complaints by other tenants to management. The unauthorized keeping of a pet shall constitute a material breach of this agreement entitling the landlord to give the tenant a thirty (30) day notice to cure the breach or vacate. The tenant expressly understands that this covenant cannot be waived by inaction on the part of the landlord and knowledge of a pet by Landlord can only be deemed given by tenant sending a registered or certified letter to the Landlord. In the event written permission is granted a pet deposit of ONE MONTH'S RENT $______) shall be required. In any event the tenant will be responsible for any and all pet damage.

**SNOW & ICE** 12. That he will keep the side-walks immediately in front of the said premises free from obstruction of any nature, properly swept. He will remove snow and ice therefrom, unless he shall occupy an apartment in an apartment building.

**LOSS BY FIRE** 13. That he will promptly give the Landlord notice of all damages or fire that may be caused to said premises and will permit the Landlord, or any of his agents, servants, employees or contractors, to make repairs thereon, which the Landlord considers necessary or desirable. If the premises become uninhabitable by reason of fire, or other casualty, the rent herein shall be deemed suspended until said premises are restored to habitability. Nothing herein shall be construed however, as requiring the Landlord to rebuild or restore said premises, and the landlord may, at his sole option, notify the tenant that the tenancy hereby created is terminated and at an end.

**ALTERATIONS OR ADDITIONS** 14. That he will not make any alterations or additions to the structure, equipment or fixtures of said premises or remove exchange or replace same, or place any television or radio antennas, install any air conditioning or heating equipment or apply paint or other coloring to any portion of said premises, without the written consent of the Landlord first had and obtained.

**FIRE HAZARD** 15. That he will not do anything which would increase the rate of fire insurance upon the building. Not to allow any explosives, gasoline pr other combustible materials to be kept on said premises.

**FREEZING EQUIPMENT** 16. That he will pay for repairs for any damage to the heating plant, pipes, radiators or plumbing fixtures caused by freezing, and pay for repairs for any other damage caused by freezing, and pay for any other damage caused to the premises by his negligence or the negligence of his servants, members of his family or other persons who may visit him, or any damage to the fixtures therein caused by improper use, or caused by failing to give them proper service or any damage caused by the tenant's failure to maintain adequate heat to insure that no plumbing or heating equipment or pipes should freeze.

**RENT SIGN AND SHOW** 17. That he will permit the Landlord to post a FOR RENT sign on said premises and show the same at reasonable hours to prospective Tenants in the event that he gives a Notice to Quit to the Landlord, or receives a Notice to Quit said premises from the Landlord.

**WAIVER OF NOTICE** 18. PROVIDED ALWAYS, that if the tenant shall fail to pay said rent, in advance as aforesaid although there should have been no legal or formal demand made, or break or violate any of the within covenants, conditions, or agreements, then, and in any of said events, this agreement and all things herein contained shall, at the option of the Landlord, cease and determine AND SHALL OPERATE AS A NOTICE TO QUIT THE THIRTY (30) DAYS' WRITTEN NOTICE TO QUIT HEREBY EXPRESSLY WAIVED and the landlord may proceed to recover possession of said premises under and by virtue of the provisions of the code of Laws for the District of Columbia, or by such legal process as may be, at the time, in operation and in force, in like cases relating to proceedings between Landlords and Tenants. Tenant agrees that the waiver of the notice to quit in the event of non-payment, as set out herein is to be deemed a real covenant, for the benefit of the real estate, and running with the land. This covenant shall be deemed a real covenant, for the benefit of the real estate and running with the land. This covenant shall be deemed to be enforceable by any assignee of the leasehold or reversion and/or any subsequent owner or agent of this property.

**COMPLY WITH RULES AND REGULATIONS** 19. That he will use said premises in a normal manner, and will not permit noisy, boisterous or other conduct which shall be offensive to any other occupant of the building, and that he will conform to the rules and regulations now made, or hereafter made, by the Landlord for the management of the building, its corridors, porches, lobbies, drives, grounds and other appurtenances, and of the delivery of goods, merchandise and other things by trades people and other persons. In order to protect peace, comfort and safety off all residents of these premises and to protect the general building and grounds, it is expressly agreed by the Tenant that failure of parents, the members of the family or servants agents, invitees or employees of the Tenant, to maintain adequate control over the actions of Tenant's children will constitute a breach of this Agreement as if such violations of its terms had been committed by the Tenant Himself.

**COURT COSTS AND ATTORNEY FEES** 20. It is expressly agreed, that in the event that a summons and complaint is issued, as aforesaid, and the Landlord is awarded a lawful judgment in it favor, the Tenant expressly promises and agrees to pay all costs and/or fees awarded by the Court within said lawful judgment. Failure to pay such amounts will be deemed a breach of the lease agreement. In the event these sums are not paid the Landlord may, at its option, deduct such awarded costs, aforesaid, from such sums paid by the tenant first, and apply the balance of payment to rent, or the landlord may at its option, initiate legal action under the Laws of the District of Columbia to collect such funds or to obtain possession of the property due to breach of the lease.

**RETAIN POSSESSION AFTER SETTLEMENT OR JUDGMENT** 21. If proceedings shall, at any time be connected for the recovery of possession, as aforesaid and a compromise or settlement shall be effected, either before or after judgment, whereby the Tenant shall be permitted to retain possession of said premises, then such proceedings shall not constitute a waiver of any condition of agreement contained herein, or of any subsequent breach thereof, of this agreement.

**BANKRUPTCY** 22. IT IS FURTHER UNDERSTOOD AND AGREED, That in the event the Tenant is adjudged a bankrupt, or makes an assignment for the benefit of his creditors, then, this agreement shall, at the option of the Landlord, immediately cease and determine, and said premises shall be surrendered to the Landlord, who hereby reserves the right in either of said events to forthwith re-enter and repossess said premises. Any petition filed in bankruptcy, or a receivership shall not operate to stay legal proceedings to recover possession of the property.

**NOTICE TO VACATE** 23. In the event that the tenant, after expiration of the initial lease term, desires to give up said premises, he shall give to the landlord at least thirty (30) days written notice of any intention to move from said premises, said notice to be given on or prior to the rent due date, and shall be entitled to like notice from the Landlord, in the event the landlord desires possession of said premises, provided however, that the tenant shall not be entitled to any notice in the event said rent is not paid in advance, without demand, or in the event of the breach of the aforesaid covenants, the usual thirty (30) days written notice being hereby expressly waived in such events. No tenant shall be evicted from a rental unit for any reason other than non-payment of rent unless he or she has been served a written notice to vacate which meets the requirements of Sec.501 of the Rental Housing Act. Notice of all evictions other than for non-payment of rent shall be served upon both the tenant and the Rent Administrator.

**LAUNDRY AND STORAGE ROOM** 24. IT IS FURTHER UNDERSTOOD AND AGREED, That in the event the landlord sets apart, in the building, laundry and storage room for the convenience of Tenants, Tenants may, at their own risk, use said laundry and storage facilities, if such are available. Ingress or egress thereto and therefrom is for the convenience of the respective Tenants and is not operated or controlled by the Landlord. Employees of the Landlord are prohibited from, in any way, accepting any property of the tenant as bailee or otherwise, or for safekeeping. In the event that any such employee of the Landlord shall accept any property of the Tenant, in such event, the said employee shall thereupon become the agent of the Tenant, which shall also apply to services rendered in moving and handling of articles in and for such laundry or storage room; the Tenant assumes all risk of loss and damage to said articles or things left in the storage room while in transit to and from said storage or laundry room.

**NOT LIABLE FOR INTERRUPTION OF SERVICES** 25. IT IS FURTHER UNDERSTOOD AND AGREED, That if he the Landlord furnishes heat for the entire building, the Landlord shall have no liability to the tenant, due to any discontinuance of heat, hot water, for such services furnished, or for the discontinuance of any other service caused by accident, breakage, strikes, or for any other reason. The Landlord shall not be liable for loss or damage to the property of the Tenant caused by moths, termites or other vermin, or by rain, water or steam that may leak into or flow from any part of said building or from any adjacent building or through any defects in the roof or plumbing or any other source. Nor shall the Landlord be liable for loss or damage to the Tenant for anyone residing in the premises based on the existence of lead based paint or mold in the premises.

**TRASH AND GARBAGE** 26.IT IS FURTHER UNDERSTOOD AND AGREED, That the tenant agrees to provide necessary trash and garbage receptacles for their own use, and not to mix the same and dispose of said trash and garbage as required by law.

**WAIVER OF PROVISIONS** 27. IT IS FURTHER UNDERSTOOD AND AGREED, That no waiver by the Landlord of any breach of any provision hereof shall operate as a waiver of the provision itself, or any subsequent breach thereof. And the acceptance of rent by the Landlord with or without the knowledge of such breach, shall in no way have any effect thereon and shall not operate as a waiver of the breach.

**KEYS AND LOCKS** 28. It is agreed that upon the termination of the tenancy the Tenant shall deliver the keys of the premises to the landlord at 6901 4th St., NW, Washington, D.C. 20012. Locks shall not be changed, altered, or replaced, nor shall new locks be added by the Tenant without the written permission of the Landlord first had and obtained. Any locks so permitted to be installed shall become the property of the Landlord and shall not be removed by the Tenant. If a lock is changed (with prior consent of the landlord) the tenant agrees to immediately provide a key to the lock to the Landlord.

**REMODEL OR DECORATE** 29. That he will not remodel, alter, paint, paper or install glass in any part of the premises without the written consent of the landlord first had and obtained. No mirrors or contact paper or other types of adhesive backed tiles shall be attached to any walls or other surfaces.

**WATERBEDS** 30. That no water beds shall be permitted on the premises without the written consent of the Landlord first had and obtained.

**SERVICE CHARGES AND STOPPAGES** 31. That the tenant will pay the service charge of the contractor if an appointment is made for a workman to gain access to Tenant's apartment or house, and upon arrival, the workman is unable to get into the premises. The Tenant will maintain the plumbing in said premises free from stoppage, and in the event the plumbing of said premises is obstructed due to negligence of the Tenant, the Tenant's guest, family, servants or employees, the cost for clearing any such obstructions will be paid by tenant, immediately upon presentation of the bill to Tenant by Landlord.

**BAILOR-BAILEE RELATIONSHIP** 32. That employees of landlord are prohibited as such from receiving any packages or other articles delivered to the building for Tenant or persons residing with Tenant, and that should any such employee receive any such packages or articles, he or she in so doing shall be the

agent of tenant and not the Landlord and no Bailor-Bailee relationship shall exist between the Landlord and Tenant.

**NOT TO PLACE ANYTHING IN WINDOWS** 33. No packages, cans, bottles, flower pots, boxes or other articles shall be placed on the outside of sills of any windows or balcony of the premises, or place any sign, advertisement or notice upon the leased premises without the permission of the Landlord first had and obtained in writing.

**WASHERS OR DRYERS** 34. Tenants shall not install or use any washing or drying machines in or about the premises or his individual apartment except coin machines that may be placed in the building at the Landlord's direction. If coin machines that may be placed in the building at the Landlord's direction, tenant agrees to comply with all rules placed in effect by the Landlord for the operation of said coin washing or drying machines.

**BAD CHECK AND LATE FEES** 35. In the event the Tenant fails to pay the rent on the day the same comes due or within 7 days thereafter for any reason or timely pays rent with a check that is subsequently dishonored, a late charge of $10.00 shall be charged for each month rent is not paid on time. In the event that a check tendered by tenant is dishonored or returned for any reason the tenant shall pay a charge of $25.00 to the landlord. In the event the rent is not received by landlord within seven (7) days after it is due, or if landlord has received any dishonored checks from tenant, landlord may, in its sole option, require all future payments made by money order or certified funds.

**EVICTION FEES** 36. The tenant agrees to pay all charges incurred by the Landlord for issuance of the writ of restitution and the labor hired for the execution thereof.

**SEVERABILITY** 37. Any provision of this agreement to the extent that it is in conflict with any law of the District of Columbia or provision of Amendments to the Housing Regulations of the District of Columbia effective June 15, 1970 (herein referred to as the "code") is hereby deleted and any provision required by the Code which is not included in this agreement is hereby inserted as an additional provision of this agreement; but all only to the extent required by the Code and then only so long as the applicable provision of the code is not repealed by the Government of the District of Columbia or held invalid by a court of competent jurisdiction. This Agreement contains the entire agreement in writing executed by the parties and shall not be modified in any manner except by an instrument in writing executed by the parties. If any term or provision of this lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the reminder of this agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this lease shall be valid and be enforced to the fullest extent permitted by law.

**SOLDIERS & SAILORS CIVIL RELIEF ACT** 38. Tenant represents that neither he nor any authorized occupant who resides in the demised premises is presently in the United States Military Service, or any branch of the Armed Forces of the United States, and agrees upon notice of induction or induction to promptly notify the Landlord in writing by certified mail. Failure to notify the Landlord shall, to the extent permitted by law, operate as a bar to any suit brought claiming the protection of the Soldiers & Sailors, Civil Relief Act of 1940, as amended.

**SUBORDINATE TO TRUST** 39. It is further understood and agreed that this agreement is subordinate to and subject to the lien of any mortgage or deed of trust, encumbrance or encumbrances now or at any time hereafter placed upon said premises, and tenant shall execute any and all instruments which the Landlord shall require.

**BINDING ON HEIRS** 40. It is further understood and agreed that the covenants, conditions and agreements contained herein are binding on, and may be legally enforced by the parties hereto, their heirs, successors and assigns respective, and that no waiver of any breach of any covenant, condition or agreement herein shall be construed to be a waiver of that covenant, condition or agreement or any subsequent breach thereof. Where the construction requires, words in the singular shall be substituted for the plural and feminine for the masculine and vise versa.

**EMINENT DOMAIN** 41. It is further understood and agreed that should the building in which the tenant resides be taken by eminent domain proceedings by any governmental or quasi governmental instrumentality, then this agreement shall be terminated upon 30 days notice to the tenant. The tenant agrees that the entire sum awarded for the taking premises, or acquired as aforesaid, shall be paid to the Landlord, and the same shall not be diminished in value by the tenancy herein created, and tenant waives any such claim.

**ACCESS AND LOCKS** 42. The Landlord shall retain passkeys to all of the doors of the leased premises. The landlord or its agents shall have access to the leased premises at all reasonable hours in order to inspect the same or to make necessary repairs either in the leased premises or in said building. The tenant will not change or add locks without prior consent of landlord. Should written consent be given and should tenant change a lock or install an extra lock, a copy of the key shall be given to the Landlord on the day the lock is changed or added. Failure to provide a key shall constitute a material breach of this agreement and shall excuse the Landlord from failure to repair. The tenant shall allow the landlord or his agents to have access to the premises at any time without notice or warning in case of emergency or for the purpose of inspection in the event of fire or other property damage.

**STOVE AND REFRIGERATOR** 43. Tenant agrees to defrost the refrigerator on a regular basis and the cooking facility (oven) is not to be used as a space heater under any circumstances.

**WATER WASTE** 44. Tenant agrees to report all dripping faucets or flush tanks (toilet) running. Faucets or toilets found to be running in a steady stream will be treated as tenant negligence.

**REPORTING OF COMPLAINTS AND REPAIRS** 45. It is expressly understood and agreed that in the event the tenant shall desire to make any complaint concerning the condition of the premises, or the need for repairs which has not been caused by the tenant, unless the tenant shall give notice of such requirement or the need for repairs in WRITING, it will be understood that such a complaint shall not be deemed as being given and the tenant shall not be entitled to use such claim as a defense for rent in any action which the landlord shall file for such rent. In the event the tenant shall give such written notice to the landlord, which shall be deemed not to have been given until actually received by the landlord (proof of such service being upon the tenant) the landlord shall be entitled to at least ten (10) days to make such repairs, unless the nature of the repairs required or need is major structural kind, in which event the landlord shall be entitled to a reasonable time to make such repairs. In considering such reasonable time, among other things to be considered the availability of materials and contractors shall be considered, and in event such materials and contractors are not then immediately available such reasonable time shall commence to run from time such materials and contractors become available. The last provision shall also apply to those cases in which the ten (10) day period shall apply. In the event the tenant shall not give such notice to the landlord in WRITING, as aforesaid, then such claim for repairs shall not be deemed as a valid defense to the payment of rent in any action filed by the Landlord. It is further agreed, that it shall not be deemed a violation of the of the D.C. Housing Code until the expiration of the above specified times, and during such running of the ten (10) day period, or the running of the reasonable time as aforesaid, as the case may be, no diminution of rent shall be claimed nor shall the tenant be entitled to any such reduction.

**RESPONSIBILITY OF TENANT AS TO PAYMENT OF REPAIRS OR NEGLIGENCE OR DAMAGE BY HIM** 46. The tenant is responsible to pay all charges for repairs necessitated by negligence of or damage by him, his servants, his guests or invitees. In the event landlord has been prevented from complying with a municipal order or regulation to make repairs due to any action on the part of the tenant, his guests or invitees, and landlord is fined, such fine may be charged to the tenant. Tenant will also be responsible for any service call by a contractor where the tenant has made an appointment and the contractor has failed to gain access. Failure to comply with this provision shall be deemed a material breach of this agreement and the landlord may serve the tenant with a thirty (30) day notice to cure or vacate or take any other remedy allowed by Law.

**CARPET OR RUG** 47. It is further understood and agreed that 80% of floors must be covered with carpets or rugs.

**CURTAILMENT OF SERVICES** 48. That Landlord shall not be required to furnish any service to the leased property, including but not limited to heat, air conditioning, water, and power. Except when due to the negligence of Landlord, Landlord shall not be liable for any failure of water supply or electric current or of any service by any utility, for injury to person (including death) or damage to property resulting from steam, gas, electricity, water, rain or snow, which may flow or leak from any part of the leased property, or from any pipes, appliances, or plumbing works, from the street or subsurface, or from any other place, or for interference with light or other easements, however caused. That all property in said premises shall be and remain at TENANT's sole risk, and LANDLORD shall not be liable for any damage to or loss of such property arising from any acts of negligence of any other persons nor from the leaking of the roof or from the bursting, leaking or overflowing of water, sewer or steam pipes, or from heating or plumbing fixtures, or from electric wires or fixtures, of Buffalo Moths, Termites or Bedbugs or from any other cause whatsoever, nor shall LANDLORD be liable for any injury to person of TENANT or other persons in or about said premises; TENANT expressly agreeing to hold LANDLORD harmless in all such cases. Notwithstanding anything herein to contrary this clause shall not affect any liability on LANDLORD's part implied by law. That TENANT shall indemnify LANDLORD against all liabilities, expenses, and losses incurred by LANDLORD as a result of (a) failure by TENANT to perform any covenant required to be performed by TENANT hereunder; (b) any accident, injury or damage which shall happen in or about the leased property or premises or on under adjoining streets, sidewalks, curbs, or vaults due to negligence of tenant or his guests and/or agents; (c) failure to comply by TENANT with any requirements of any governmental authority; and (d) any mechanic's lien, or security agreement filed against the leased property, any equipment therein, or any materials used in the construction or alteration of any building or improvement thereon.

**TENANT'S PROPERTY AND TENANT'S INSURANCE** 49. TENANT expressly agrees that the LANDLORD is not the insurer of the safety of TENANT 's person or property and that LANDLORD undertakes to take ordinary precautions in order to provide reasonably secure leased premises, and that no representations regarding security have been made other than those contained herein. TENANT at his sole cost shall obtain and maintain in effect at all times during the term of his Lease an "all risk" policy covering all his personal property and all other property in the leased premises for not less than full replacement value.

ENTIRE UNDERSTANDING

Tenant hereby acknowledges that he has inspected said leased premises and that they are in good condition, habitable and in complianc vith the D.C. Housing Code and other applicable local and federal regulations and his acceptance of this lease is conclusive evidence that the ›remises are in good and satisfactory order and repair, unless otherwise specified herein.

This is to certify and acknowledge receipt of an executed copy of the housing regulations, Chapter 1, 101, & 106.

**The unit rents for $825.00. It is understood that the rent can be raised, with proper notice, pursuant to :urrent laws governing these matters.**

It is agreed that the Landlord tenders and the Tenant accepts this agreement on the basis of representations contained in the application ubmitted to the landlord by Tenant for the purpose of inducing the Landlord to enter into this agreement with the Tenant. Landlord reserves the ight to cancel this agreement and repossess the demised premises should any of the said representations be misleading, inaccurate or untrue.

This agreement may be rescinded by the Tenant within Twenty-Four (24) hours after signing by Tenant by notice, in writing, delivered o the Landlord, provided possession of the premises has not been taken by Tenant.

This agreement constitutes the entire agreement between the parties and no other representations, whether oral or written have been nade to Tenant. Further by the signature below. Tenant acknowledges that he has read and understands all of the terms of this agreement and igrees to the same.

IN TESTIMONY WHEREOF, the parties have hereunto affixed their hands and their seal the day any year hereinabove first written.

Tenant

The Barac Co.

Tenant

By Agent

**General Insurance policies for Apartment Buildings *DO NOT* include coverage for a Residents personal property. To insure 'our personal belongings against fire, theft and/or damages of any insurable type (including damages caused by building defects), The Barac Co. suggests you contact an insurance company of your choice regarding a "Tenants" homeowners policy.**